IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CAITLIN PEYTON, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>WALMART, INC.<br><br>                              Defendant. | Civil Action No. 7:21-cv-05880<br><br>Hon. Vincent L. Briccetti<br><br>*[USDC SDNY DOCUMENT ELECTRONICALLY FILED DOC #: ___ DATE FILED: 3/24/23]* |

**So-ORDERED**     <u>**STIPULATED PRODUCTION PROTOCOL**</u>

Caitlin Peyton ("Plaintiff") and Walmart, Inc. ("Walmart", collectively the "Parties") agree to the following "Stipulated Production Protocol" ("Protocol") for the production of discoverable documents originating from hard copy sources and electronically stored information ("ESI") pursuant to the Federal Rules of Civil Procedure and subject to the Parties' Stipulated Confidentiality Agreement and Protective Order.

<u>**General Provisions**</u>

    1.    As used herein, "Requesting Party" means a party to whom documents are produced in response to a discovery request. As used herein, "Producing Party" means a party that produces documents in response to a discovery request. As used herein, the words "Party" or "Parties" include the Requesting Party and the Producing Party.

    2.    This Protocol will govern the exchange of documents in this Action and applies to the ESI provisions of Fed. R. Civ. 16, 26, 33, 34, and 37. This Protocol also applies to Fed. R. Civ. P. 45, if agreed to by the recipient of any document request issued pursuant to that rule, in all

instances in which the provisions of Fed R. Civ. P. 45 are the same as, or substantially similar to, the provisions of Fed. R. Civ. P. 16, 26, 33, 34, and 37. Nothing contained herein modifies Fed. R. Civ.45 and, specifically, the provision of Fed. R. Civ. 45(d)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

3.  Nothing in this Protocol shall be deemed to prevent the Parties from agreeing to terms different than or inconsistent with the terms of this Protocol.

4.  Nothing in this Protocol shall be deemed to constitute a waiver of any objections a Producing Party may have with respect to any document request.

5.  Nothing in this Order shall be construed or interpreted as precluding a producing party from performing a responsiveness review to determine if documents captured by search terms are in fact relevant to the requesting party's request. Further, nothing in this Order shall be construed or interpreted as requiring the production of all documents captured by any search term if that document is in good faith and reasonably deemed not responsive to the requesting party's request.

6.  No provision of this Order affects any inspection of source code that is responsive to a discovery request consistent with the protective order governing this case.

7.  This Protocol is consistent with Fed. R. Civ. 26(b)(1) and limits the scope of discovery to any non-privileged data that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the Parties' relative access to relevant information, the Parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Nothing in this Protocol shall

obligate a Party to preserve ESI outside the scope of permissible discovery under Fed. R. Civ. 26(b)(1).

**Cooperation and Proportionality**

8. The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter.

**Preservation**

9. The parties have discussed their preservation and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

   a. Parties shall preserve non-duplicative discoverable information currently in their possession, custody or control, however, parties shall not be required to modify, on a going-forward basis, the procedures used by them in the usual course of business to back up and archive data.

   b. Subject to and without waiving any protection described in Section 4(a) above, the parties agree that:

       1. The parties have discussed the types of ESI they believe should be preserved and the custodians, for whom they believe ESI should be preserved. The parties shall add or remove custodians as reasonably necessary;

       2. Defendant will provide to Plaintiff a list of the custodians for whom ESI will be searched, along with their job titles and a description of their job responsibilities as they relate to the products at issue.

3

c. These data sources are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced, unless otherwise ordered by the Court upon a motion of a party:

1. backup systems and/or tapes used for disaster recovery; and
2. systems no longer in use that cannot be accessed.

d. Among the sources of data the parties agree are not reasonably accessible, based on mutual representation of the parties' counsel, the parties agree not to preserve, collect, process, review and/or produce the following:

1. Deleted, slack, fragmented, or unallocated data only accessible by forensics.
2. Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.
3. Online data such as temporary internet files, history, cache, cookies, and the like.

**Documents from hard copy sources**

10. The Parties will produce documents originating from hard copy sources ("Hard Copy Documents") in Group IV single-page TIFF format (black and white, 300 dpi) with corresponding searchable OCR text (or searchable PDF if production format dictates), along with the below-listed fielded data when available. The Parties will provide a standardized load file compatible with Relativity and with a Bates number field included in the load file to match text

and fielded data with TIFF images (load file may be omitted with a PDF format production). With respect to Hard Copy Documents, data on the load file will include:

     a.    Beginning Document Bates Number
     b.    Ending Document Bates Number
     c.    Beginning Family Bates Number (begins with 1st page of parent)
     d.    Ending Family Bates Number
     e.    Custodian or Source
     f.    Confidentiality Designation
     g.    Page Count
     h.    Redaction (Y/N)
     i.    Text File Path, including filename and extension (.txt)

**Electronically Stored Information**

**Search**

11.    Within 7 days of the Parties' agreement to this Stipulation or the entry of this Stipulation through an Order of the Court (whichever is earlier), they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is not subject to discovery, pursuant to the following procedures:

The Parties will meet and confer and attempt in good faith to reach agreement regarding the following issues: (1) the date ranges for which potentially relevant ESI will be searched; (2) the identity of databases that may have discoverable ESI (including, but not limited to, the e-mail accounts of likely custodians and any file servers – whether on a local network or through cloud providers or otherwise – accessible by likely custodians that are used to share documents and files between or among departments); and (3) the search terms, phrases, or parameters to be used in searching for responsive ESI. Within 7 days of the Parties' agreement to this Stipulation or the entry of this Stipulation through an Order of the Court (whichever is earlier), Defendant shall identify custodians who may have discoverable ESI, and identify databases that may have

discoverable ESI. Thereafter, the Parties shall meet and confer in good faith to reach agreement within 3 business days.

Once the Requesting Party and the Responding Party reach agreement on a specific search of ESI to be conducted, the Responding Party shall conduct the search within 14 days. The Responding Party will provide the Requesting Party with an initial "hit report" showing the number of documents for each custodian which appear to contain one or more agreed upon search terms based on the initial search, as well as the total number of "unique" documents identified by the search. The Requesting Party and the Responding Party may subsequently meet and to confer to discuss whether a particular search is appropriate under the circumstances, and may agree to expand or narrow the search terms. If the Parties conduct a meet and confer regarding a search but reach an impasse and are unable to resolve the dispute, the Requesting Party may bring the issue to the Court for resolution using the process provided for in the Federal Rules of Civil Procedure, the Local Rules of the United States District Court for the Southern District of New York, and applicable bench rules and/or individual practices.

**Discovery of ESI shall proceed as follows:**

12.     Except as otherwise stated herein, the Parties will produce documents originating as ESI, or kept as such in the ordinary course, in TIFF format with extracted text (or searchable PDF if production format dictates), along with the below-listed metadata fields when available. The Parties will provide a standardized load file compatible with Relativity and with a Bates number field included on the load file to match text and metadata with TIFF images (load file may be omitted with a PDF format production). With respect to ESI, data on the load file will include:

      a.    Beginning Document Bates Number
      b.    Ending Document Bates Number
      c.    Beginning Family Bates Number (begins with 1st page of parent)
      d.    Ending Family Bates Number

  e. Custodian or Source
  f. Duplicate Custodians
  g. Confidentiality Designation
  h. Page Count
  i. Redaction (Y/N)
  j. Document Date (if available)
  k. File Name (including extension)
  l. File Extension
  m. File Size
  n. Document Type
  o. Email From
  p. Email To
  q. Email CC
  r. Email BCC
  s. Email Subject
  t. Email Date Received
  u. Email Time Received
  v. Email Date Sent
  w. Email Time Sent
  x. Timezone (UTC)
  y. MD5 Hash Values (or alternatively agreed upon Hash Standard)
  z. Text File Path, including filename and extension (.txt)
  aa. Native File Path, including filename and extension

  13. The Parties may redact information that is privileged or protected from discovery as work product or by reason of any other applicable privilege or immunity.

  14. The Parties will produce redacted documents in TIFF format with corresponding searchable OCR text (or in searchable PDF if production format dictates; or in native format for file types that do not convert well to TIFF/PDF, such as Excel files) and the associated metadata for the document, ensuring the redacted content is fully protected from disclosure.

  15. The Parties will produce in native format those documents and ESI that do not convert well to TIFF images (in addition to Excel and Power Point, *e.g.* oversized drawings, picture files, audio and video files), or will ask the Requesting Party to meet and confer regarding a reasonable alternative form of production.

16. The file name for the documents produced in native format will consist of a Bates number and a confidentiality designation if available. The Parties will provide a corresponding placeholder TIFF image (or PDF if production format dictates) for native files included in a production bearing a sequential BATES number within the family BATES range.

17. The Parties may withhold documents from production by designating the documents privileged pursuant to a claim of attorney-client privilege, work product protection, or other applicable privilege or immunity in accordance with the Southern District of New York's discovery rules and the Parties' Stipulated Confidentiality Agreement And Protective Order.

18. The producing party shall produce a privilege log that complies with all requirements set forth in Fed. R. Civ. P. 26(b)(5)(A)(ii) and Local Civil Rule 26.2 one week after each of its document production(s).

19. The Parties may confer on the nature and scope of privilege logs for the Action, including whether categories of information may be excluded from any logging requirements and whether alternatives to Document-by-Document logs can be exchanged. Failure to log privileged documents or metadata will not result in the waiver of privilege, provided that upon discovering the inadvertent omission, the Producing Party sends to the Requesting Party an addendum to the appropriate privilege log explaining the reason for the omission and providing the required privilege log entries for the document(s).

20. The Parties will perform de-duplication of ESI within and across custodians according to MD5 or SHA-1 hash values and will produce only a single copy of identical ESI. Entire document families may constitute duplicate ESI. De-duplication shall not break up document families. All custodians of a de-duplicated document must be identified in the "Duplicate Custodians" metadata field specified in Paragraph 8. If the Parties de-duplicate ESI,

they shall provide custodian associations in a semi-colon delimited field that includes duplicate custodian name information for the duplicate custodians.

21. Email Threading. Where multiple email messages are part of a single chain or "thread," a party is only required to produce the most inclusive message ("Last In Time Email") and need not produce earlier, less inclusive email messages or "thread members" that are fully contained, including attachments and including identical senders and recipients, within the Last In Time Email. Only email messages for which the parent document and all attachments are contained in the Last In Time Email will be considered less inclusive email messages that need not be produced.

22. Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during the process are located in the National Software Reference Library ("NSRL") NIST hash set list.

23. Except as otherwise allowed herein, the Parties shall preserve parent-child relationships (the association between an attachment and its parent document) where possible. The Parties will provide a Beginning Family Bates Number and Ending Family Bates Number for each produced attachment in the data load file.

24. The Parties shall assign a Bates number to individual pages of TIFF documents (or PDF documents) and a Bates number to each document produced in native format. Bates numbers shall be unique across the entire document production and sequential within a given document.

25. The Parties understand that this protocol contemplates rolling productions of documents, and they acknowledge that nothing in this Protocol waives, restricts or eliminates the Parties' respective rolling production obligations, the Parties' respective supplementation

obligations as required under the Federal Rules of Civil Procedure or the Parties' "claw-back" rights and obligations pursuant to the Parties' Stipulated Confidentiality Agreement and Protective Order.

26.	If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the Parties shall meet and confer to try to agree on a reasonable, alternative form of production. Nothing in this protocol prohibits a party from seeking relief from this protocol.

27.	Nothing in this protocol shall be construed to affect, modify or amend the parties' Parties' Stipulated Confidentiality Agreement And Protective Order filed with the Court.

**Production of Databases and Other Structured Data.**

28.	Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format.

29.	The Parties will meet and confer to address the production and production format of any responsive data contained in a database or other structured data source. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF-image format. If an existing report form is not reasonably available, the Parties will meet and confer to attempt to identify a mutually agreeable report form (PDF, Excel, csv).

**Other Data Sources**

30.	The Parties share a desire to ensure that ESI is produced in an acceptable, searchable format. The Parties recognize that certain, limited ESI may not be amenable to the proposed technical specifications. The Parties will meet and confer in good faith to reach

agreement regarding these issues and the appropriate form of production, and will seek Court intervention if necessary.

**Deficiency Procedure & Disputes**

31. If the Requesting Party has good cause to believe that a Producing Party's discovery efforts have been deficient, the Parties will meet and confer with the goal of identifying a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts.

32. As used in this section, "good cause" requires more than mere speculation; the Requesting Party must offer some concrete evidence of a deficiency in the Producing Party's discovery process.

33. Upon a showing of good cause, the Parties will meet and confer to consider appropriate means to assess the reasonableness of a Producing Party's discovery efforts, or to identify additional proportional production criteria to cure the deficiency.

34. If the Parties are unable to agree upon a means by which the Producing Party can provide assurances of the reasonableness of its discovery efforts, the Parties may seek court intervention.

**Clawback Provision**

35. The production of privileged or work-product protected documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding.

36. This ESI Protocol shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence (FRE) 502(d) and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S. Code § 1738. In the event of any

subsequent conflict of law, the law that is most protective of privilege and work product shall apply.

37. If the Requesting Party has reason to believe that a produced document or other information may reasonably be subject to a claim of privilege, then the Requesting Party shall immediately sequester the document or information, cease using the document or information and cease using any work product containing the information, and shall inform the Producing Party of the beginning BATES number of the document or, if no BATES number is available, shall otherwise inform the Producing Party of the information.

38. A Producing Party must give written notice to any Requesting Party asserting a claim of privilege, work-product protection, or otherwise privileged grounds for reclaiming documents or information (a "clawback request"). After a clawback request is received, the Requesting Party shall immediately sequester the document (if not already sequestered) and shall not review or use that document, or any work product containing information taken from that document, for any purpose. The Parties shall meet and confer regarding any clawback request.

**Final Disposition of ESI**

39. Within thirty (30) days of settlement or final adjudication, including the expiration or exhaustion of all rights to appeal or petitions for extraordinary writs, each party or non-party to whom any materials were produced <u>shall</u>, without further request or direction from the Producing Party, promptly <u>destroy all</u> documents, items or data received including, but not limited to, copies or summaries thereof, in the possession or control of any expert or employee. The Requesting Party shall provide written certification of destruction to the Producing Party no later than 30 days after the termination of this matter.

Respectfully stipulated to and submitted by,

**Bursor & Fisher, P.A.**

By: *Fred Klorczyk/CAM, by permission*
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
fklorczyk@bursor.com

*Counsel for Plaintiff*

**STEPTOE & JOHNSON LLP**

By: _____

Carol Brophy (*Admitted Pro Hac Vice*)
One Market Plaza
Spear Tower, Suite 3900
San Francisco, CA 94105
(415) 365-6700
cbrophy@steptoe.com

Anthony Hopp (*Admitted Pro Hac Vice*)
227 West Monroe Street
Suite 4700
Chicago, IL 60606
(312) 577-1300
ahopp@steptoe.com

Charles Michael
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
cmichael@steptoe.com

*Counsel for Walmart, Inc.*

**IT IS SO ORDERED:**

Dated: _____, 2023

_____
Hon. Vincent L. Briccetti
United States Judge

Respectfully stipulated to and submitted by,

**Bursor & Fisher, P.A.**

By: *Fred Klorczyk/camy by (emission* 
Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
fklorczyk@bursor.com

*Counsel for Plaintiff*

**STEPTOE & JOHNSON LLP**

By: _____

| | |
|---|---|
| Carol Brophy (*Admitted Pro Hac Vice*)<br>One Market Plaza<br>Spear Tower, Suite 3900<br>San Francisco, CA 94105<br>(415) 365-6700<br>cbrophy@steptoe.com | Anthony Hopp (*Admitted Pro Hac Vice*)<br>227 West Monroe Street<br>Suite 4700<br>Chicago, IL 60606<br>(312) 577-1300<br>ahopp@steptoe.com |

Charles Michael
1114 Avenue of the Americas
New York, New York 10036
(212) 506-3900
cmichael@steptoe.com

*Counsel for Walmart, Inc.*

**IT IS SO ORDERED:**

Dated: March 24, 2023

_____
Hon. Vincent L. Briccetti
United States Judge

13